WILFRED BOLDUC *vs.* WILLIAM S. GARCELON.

Androscoggin.        Opinion January 16, 1929.

*Clifford & Clifford,* for plaintiff.
*Frank A. Morey,* for defendant.

SITTING: WILSON, C. J., DEASY, STURGIS, BARNES, BASSETT, JJ., PHILBROOK, A. R. J.

STURGIS, J.    The plaintiff brings this action to recover damages for injuries resulting from the collision of his motorcycle with the defendant's automobile. His verdict below is brought here on motions for a new trial.

The evidence shows that the collision occurred a little after nine o'clock in the forenoon of June 21, 1928, at the intersection of

Main and Holland Streets in the City of Lewiston. The defendant was driving up Main Street on the right hand side, and in disregard of the motor vehicle laws of this State, turned his car to the left across Main Street into Holland Street, passing south and to the left of the intersection of the center lines of the travelled part of the two ways. This was a direct violation of Chap. 211, Sec. 7 P. L. 1921, a statute especially designed to prevent collisions at the intersection of ways, reading as follows: "Whoever operates a motor vehicle shall at the intersection of ways keep to the right of the intersection of the center lines of the travelled part of such ways when turning to the right, and pass to the right of such intersection when turning to the left, except when traffic officers otherwise direct traffic."

This flagrant disregard of the law by the defendant, while not absolutely establishing his liability, creates a presumption of negligence in favor of the plaintiff which the defendant, upon the issue of his own negligence, must overcome if he would prevail. "Violation of the law of the road is prima facie evidence of negligence on the part of the person disobeying it." *Dansky* v. *Kotimaki*, 125 Me., 72, 74, and cases cited.

The evidence offered in the defendant's behalf fails to overcome this presumption against him. As he turned across Main Street his attention was undoubtedly directed to automobiles following immediately behind him, and in his turn across and into Holland Street he gave little if any consideration to the approach of vehicles from the north. In fact, from the evidence we think it is doubtful whether he saw the plaintiff until just prior to the collision, and the jury may well have found that the defendant suddenly and without warning turned across Main Street in entire disregard of the plaintiff's rights as a traveller upon the highway and was negligent.

The jury found also that the plaintiff was not guilty of contributory negligence. Upon this issue the facts are disputed and the testimony is conflicting. There is evidence that the plaintiff was operating his motorcycle at a high rate of speed. He says he was driving slowly, and in the situation in which he found himself did all that a reasonably prudent man could do. His testimony is: "I started down on my motorcycle. When I got down as far as Hig-

gins Block there was a truck set between those two trees, and when I got up to the rear end, the hind wheel of the truck, I seen the car coming, an automobile coming on the car track. So I kept going just the same, going ahead. When I got corner of Holland Street I looked on Holland Street and the road — wasn't no car out there that I see — so I kept coming just the same. When I got little over halfway across I seen that car leaving the car track, shooting diagonally right on to me. So I didn't have no chance to drive to my left because I didn't known if he going straight then or hit me, so I keep to my right just the same. When I got between the post and this car I got struck."

He says that before his motorcycle crossed Holland Street he "slowed down a little." And he adds that he could not turn on to the sidewalk because there was a post and tree and a woman there. His further description of the situation and his reasoning is: "If I had taken a swing out there I would have hit either the post or the woman, and if I swing this way he was too close up here and (I) would have run right into (his) car. I thought the best I could do was to go between the car and the post."

The Court cannot say as a matter of law that the plaintiff was guilty of contributory negligence. The plaintiff's version of the incidents of the collision, while controverted in certain details, is not incredible, and the facts may have been substantially as he states them. If so, it was within the province of the jury to find that the plaintiff exercised that degree of care that an ordinary, prudent person would have exercised under the circumstances, and was not guilty of contributory negligence.

The damages are not excessive. The plaintiff is a young man thirty years old, married, a carpenter by trade. He has been regularly employed at current wages. He lost his left leg near the junction of its lower and middle third. He must seek other employment, presumably less renumerative. The award of $7,491.66 is well within the range of just compensation.

There remains to be considered the stipulation of the parties by counsel in substitution of a motion for a new trial on the ground of newly discovered evidence. This procedure is irregular and without sanction in the rules of practice. It does not rest within the power or privileges of counsel to waive the motion upon which alone relief

can be granted. In strictness the demand for a new trial on the ground of newly discovered evidence is not before the Court. To avoid the expense and delay necessary to the presentation of a motion in regular form, which upon facts presented cannot avail the defendant, it is deemed best, however, to state the opinion of the Court on this issue.

The rule governing the granting of new trials on the ground of newly discovered evidence has been so recently stated in *London* v. *Smart*, 127 Me., 377 (143 Atlantic Rep., 466), that it need be but summarized here. The evidence supporting such a motion must be material and not merely cumulative or impeaching. It must have been discovered since the trial, and it must appear that it could not have been discovered before the trial by the exercise of due diligence. It must be such as will probably change the result of a new trial if granted.

The affidavits offered by the defendant fail to meet these tests. The statements of the deponents bring to light no material facts not already in evidence. The statement of Charles R. Payne tends to impeach that of the witness William F. Sheffield. That of James J. Harkins, may be construed as confirming the testimony of the defendant in some details. James H. Trask does no more in his affidavit. Assuming that the defendant exercised due diligence at the trial in gathering his witnesses, it is not clear that upon a re-trial a different verdict would probably result if the purported new evidence were heard.

The mandate must be,
*Motions overruled.*