MAUD HAM NADEAU *vs.* PAUL PERKINS.

Penobscot.     Opinion, August 21, 1937.

216

*Artemus Weatherbee,*
*E. A. Weatherbee,* for plaintiff.
*Alton C. Wheeler,*
*Arthur Thayer,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

MANSER, J. On February 17, 1935, a truck with van body, painted dark green, was left in the night-time, without lights, and unattended, on State Highway Number Two, in the Town of Winn, outside of the business or residential district. An automobile in which the plaintiff was riding as a guest passenger came into collision with the rear left corner of the truck, and as a consequence, the plaintiff received severe personal injuries. After verdict for the plaintiff for $6108.40, the case comes forward on motion for new trial. The issues presented are:

Was the jury justified in finding that the defendant was negligent, that the plaintiff was not guilty of contributory negligence; and if so, were the damages awarded excessive?

Upon the question of negligence, the plaintiff contends that the defendant violated certain provisions of the traffic statutes found in R. S., Chap. 29, Secs. 75 and 83, these laws having to do with the parking or leaving of standing vehicles on the travelled way, when practicable not to do so, and in no event unless a clear view of the vehicle may be obtained for a distance of three hundred feet in each direction on the way; and also providing that every vehicle shall have lights so displayed at night as to be visible from the front and rear.

The legislature, through the enactment of statutes, prescribes rules designed to safeguard travellers, and provides penalties for violation of such rules. If such violation is admitted, or proven by the evidence, it is prima facie evidence of negligence, as it is some-

times said, and as otherwise expressed, raises a presumption of negligence. While not conclusive, the defendant must overcome the presumption against him. *Bolduc* v. *Garcelon*, 127 Me., 482, 144 A., 395; *Rouse* v. *Scott*, 132 Me., 22, 164 A., 872; *Dansky* v. *Kotimaki*, 125 Me., 72, 130 A., 871; *Tibbetts* v. *Dunton*, 133 Me., 131, 174 A., 453.

That the truck was left unattended and without lights is not disputed, but the defendant asserts in argument that it was impracticable to do otherwise, and that on the night in question the truck was clearly visible. He, therefore, claims there was no actual violation of either statute, and that he was not guilty of actionable negligence.

The record would justify a finding by the jury that the defendant was engaged in trucking potatoes from Aroostook County to the coast. He travelled at times by night, and on the particular occasion he was unaccompanied and unprovided with lantern, flashlight or other means of producing artificial light. He had been bothered with the operation of the truck, and finally discovered it had a dead battery. He walked to a garage about a mile away for assistance, leaving the truck on the right hand side of the highway. He was unable, on account of the condition of the battery, to display the lights on the truck.

The record is silent as to whether for the half hour that he was trying to ascertain and remedy the cause of the trouble any travellers had passed, whose assistance in procuring aid he might have requested. Neither does it show whether he could have stopped the truck in some other place off the highway.

The visibility of the truck was in issue. There was evidence that it was a moonlight night and the garageman, who went to the scene sometime after the accident was able to see the truck for a considerable distance. On the other hand, it is in testimony that it had been raining during the daytime and had then grown much colder during the night. As a result, a low lying fog was more or less prevalent, which somewhat obscured vision. Another car arriving at the scene from the same direction as the plaintiff's car had proceeded, also came into collision with the truck, and a third car narrowly avoided accident by running into a snowbank. This evidence, received without objection, was admissible as tending to corrobo-

rate the version of the plaintiff's witnesses that the truck was not clearly discernible to travellers on the highway.

The application of the statute depends upon the finding of fact as to the exigency of the occasion. The defendant's failure to comply with the literal terms of the statute can not be ruled negligence as a matter of law, and there are doubtless many situations which would relieve a defendant of the imputation of negligence. Illustrations are referred to and discussed in *Tibbetts* v. *Dunton*, supra.

> "Disobedience of the rule of the road is always material, and often important evidence, tending, though not conclusively, to show negligence between which and injury there might, or might not be, on the proof, causal connection. The violation of a traffic statute is an item calling for consideration. Negligence and causal connection are ordinarily questions of fact." *Field* v. *Webber*, 132 Me., 236, 240, 169 A., 732.

In the final analysis, the question is whether under all the circumstances the defendant was guilty of negligence, of a want of ordinary care, as these terms have been frequently defined.

The Court can not say that the jury manifestly erred in its finding of negligence on the part of the defendant.

As to contributory negligence on the part of the plaintiff. She was a passenger. It is unnecessary to analyse the evidence to determine whether the driver himself was in the exercise of due care. Assuming his negligence, it is not imputable to her. However, as tersely stated in *Dansky* v. *Kotimaki*, supra, and repeated in *Peasley* v. *White*, 129 Me., 450, 152 A., 530, she could not wholly escape the duty of keeping a lookout and warning the driver of apparent danger. This duty did not require or empower her to assume control of the car; and if, in the exercise of reasonable care, she could have done nothing to avert the accident, she is not barred from recovery. The plaintiff testified to low visibility, describing the condition as a hazy mist; that the windshield was frosty and she kept wiping it in front of her with the palm of her hand. At the same instant that the driver called a warning to "duck" she noticed a sudden blur, but distinguished no object. It is not apparent that in the exercise of ordinary care she should have observed the truck in the pathway of the approaching car, or if she had, that it would have been in season

to give the driver sufficient warning to enable him to pass in safety.

The verdict as to liability can not be disturbed.

Was the verdict unwarranted as to damages? The physical injuries were serious. The plaintiff received extensive lacerations on the forehead, requiring thirty-six stitches, and leaving permanent scars. Her thigh bone, involving the right knee, was broken in many pieces. The work of repair was difficult and required much time. For nine months her leg and part of her body was encased in a heavy, cumbersome cast. The knee joint now has but one-eighth of its normal flexion and will remain permanently stiff, although there may be some improvement. The plaintiff suffered greatly, both physically and mentally for a long period. The testimony is that she was unable to work from February, 1935, to the time of the trial in September, 1936, and the inference may fairly be drawn that her disability would continue for an indefinite time. Though married, she was living apart from her husband and had been charged with and contracted liability for her personal expenses. The items introduced, without objection, amounted to over $1100.00 beside her own lost wages. She was twenty-two years old at the time of the accident. Taking into account her expenses, her lost wages, her pain and suffering, her permanent disfigurement and bodily impairment and her future lessened capacity for work, affected, in consideration, by her age and probable expectancy of life, the Court can not say that the amount awarded by the jury was excessive.

*Motion overruled.*